# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles 9/07/2023 4:13 PM David W. Slayton, Executive Officer/Clerk of Court, By D. Williams, Deputy Clerk

Darrel C. Menthe (SBN 186252)
**Sage Law Partners, PC**
9696 Culver Blvd., Suite 301
Culver City, CA 90232
(310) 388-4870 Phone
(310) 388-4871 Facsimile
Email: dmenthe@sagelawpartners.com

*Attorneys for Plaintiff Vikas Kesiraju*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES - UNLIMITED**

VIKAS KESIRAJU, an individual,

Plaintiff,

-vs-

CHARU MAKKER, an individual; 3PL Warehousing and Distribution LLC, a California limited liability company; PAVAN MAKKER, an individual; SIDDARTH MAKKER, an individual; SHIVAAN MAKKER, an individual; RAHUL CHOPRA, an individual; RAKHEE CHOPRA, an individual; and Does 1 through 25, inclusive,

Defendants.

Civil Case No.: 23STCV21543

**VERIFIED COMPLAINT FOR:**

1. **Fraud**
2. **Racketeering Influenced Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(a).**
3. **Racketeering Influenced Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c).**
4. **Racketeering Influenced Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(d).**

**COMPLAINT**

Plaintiff *Vikas Kesiraju* ("Plaintiff") hereby alleges as follows:

**PARTIES**

1. Plaintiff Vikas Kesiraju is an individual resident within the County of Los Angeles, California.

2. Plaintiff is informed and believes and thereon alleges that CHARU MAKKER is a natural person resident within the state of New Jersey, who owns and operates business(es) in Los Angeles County.

3. Plaintiff is informed and believes and thereon alleges that 3PL Warehousing and Distribution LLC ("3PLWD"), a California limited liability company with its principal place of business in the City of Industry, within the County of Los Angeles, State of California.

4. Plaintiff is informed and believes and thereon alleges that Defendant PAVAN MAKKER is a natural person resident in Jurupa Valley, in the County of Riverside, State of California.

5. Plaintiff is informed and believes and thereon alleges that Defendant SIDDARTH MAKKER is a natural person resident within the County of Los Angeles, State of California.

6. Plaintiff is informed and believes and thereon alleges that Defendant SHIVAAN MAKKER is a natural person resident in the City of Los Angeles, in the State of California.

7. Plaintiff is informed and believes and thereon alleges that Defendant RAHUL CHOPRA is a natural person resident within the County of Los Angeles, State of California.

8. Plaintiff is informed and believes and thereon alleges that Defendant RAKHEE CHOPRA is a natural person resident within the County of Los Angeles, State of California.

9. Each Defendant named herein, including those named as DOES, is, and at all relevant times mentioned herein was, the agent, servant, co-conspirator, and/or employee of each of the other named Defendants and, in doing the things alleged herein, was acting within the course and scope and with the knowledge of the other named Defendant. Plaintiff further alleges on information and belief that each Defendant named herein aided and abetted the others by authorizing and/or ratifying the acts herein alleged.

10. The full extent of the facts linking the fictitious named defendants with the foregoing causes of action and/or true names or capacities, whether individual, corporate, partnership, associate, member, or otherwise, of defendants DOES 1 through 10 are unknown to Plaintiff, who

therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as DOE is negligently, wantonly, recklessly, tortiously and unlawfully responsible in some manner for the events and happenings herein referred to and proximately caused injury and damages to Plaintiff as herein alleged. Plaintiff will hereafter seek leave of Court to amend this Complaint to show said defendants' true names and capacities after the same have been ascertained.

**JURISDICTION AND VENUE**

11. This court has subject matter jurisdiction over this action because the amount in controversy exceeds $25,000.

12. Venue is proper in this court because plaintiffs are informed and believe and thereon allege that some or all of Defendants are subject to personal jurisdiction within the County of Los Angeles, or resident within the County of Los Angeles, or has taken actions that are the subject of this complaint directed to citizens of California within the County of Los Angeles.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**THE RICO ENTERPRISE AND CONSPIRACY**

13. Plaintiff is informed and believes and thereon alleges that Defendant CHARU MAKKER owns and operates Defendant 3PL Warehousing and Distribution LLC ("3PLWD"). CHARU MAKKER has operated 3PLWD for at least ten years and has owned it entirely herself since 2020.

14. 3PLWD employed Plaintiff Kesiraju as an Information Technology (IT) specialist for no less than ten years. As an immigrant on a visa, Kesiraju was in fear of losing the job, which was necessary for his continued residence in the United States.

15. Plaintiff is informed and believes and thereon alleges that CHARU MAKKER has also controlled SUPERIOR STRENGTH LIMITED LIABILITY COMPANY ("SUPERIOR"), a New Jersey limited liability company with its principal place of business in the City of Industry, directly or indirectly through family members for no less than ten years.

16. Plaintiff is informed and believes and thereon alleges that CHARU MAKKER is the governing force behind an association-in-fact consisting of the defendants named here and SUPERIOR, and other DOE defendants not named (collectively the "MAKKER Enterprise.")

17. Plaintiff is informed and believes and thereon alleges that at the direction of Defendants, including CHARU MAKKER, 3PLWD evaded payment of employment taxes by paying its employees through SUPERIOR. After Plaintiff Kesiraju would report the payroll, SUPERIOR would write checks on its own bank account for amounts due without required state and Federal tax withholding for most employees. SUPERIOR and 3PLWD did not make required payments for employer-side taxes for most employees. For more than 15 years, Defendants orchestrated a wire transfer every two weeks from 3PLWD to SUPERIOR so that SUPERIOR could then issue the payroll without filing proper taxes. This was done to evade payment of state and Federal payroll taxes in both California and in New Jersey under a different DOE shell corporation.

18. Plaintiff Kesiraju was intimidated by Defendants into not reporting these issues for other employees due to his immigration status. Due to his immigration status, however, and the necessity to show proof of employment, Kesiraju did receive a W-2 for himself at all relevant times.

19. In 2010, CHARU MAKKER by and through her late husband HEMANT MAKKER, offered to Plaintiff to become a partner in the 3PLWD business for a payment of $60,000. Kesiraju made the payment which consisted of most of his personal savings. However, the partnership never materialized. The monies were slowly returned to Kesiraju over a period of five years, from 2011 to 2016.

20. In early May 2023, CHARU MAKKER approached Plaintiff with another offer of partnership, stating that she was not interested in running the business in California with her husband's passing, that she wanted to concentrate only on the New Jersey aspect of the business.

21. Plaintiff was wary, but after discussion they agreed instead to pursue a purchase of the business instead. Plaintiff and CHARU MAKKER met at Zinque Café in Downtown Los Angeles on May 21, 2023, to discuss the matters. CHARU MAKKER agreed in substance that the

business would be transferred to Plaintiff, and he would then pay her $20,000 per month out of the business for the next three years. Plaintiff then retained counsel to get this in writing.

22. The next day, plaintiff demanded the entire $720,000 as a lump sum payment instead, in a telephone call. Plaintiff agreed that this was possible if he could obtain an SBA acquisition loan. Plaintiff then applied for the loan through Rapid Capital Funding PC.

23. Ultimately Plaintiff and CHARU MAKKER coordinated to draft an agreement whereby Plaintiff would pay a total of $1,237,632 which included the security deposits on the two buildings (at 3920 Capitol and 1177 Jellick Avenue, both in the City of Industry) and $55,000. The agreement was drafted and CHARU MAKKER stated over electronic communications that the business would be handed over to Plaintiff on June 1, 2023.

24. CHARU MAKKER then undertook a series of actions designed to make Plaintiff believe that she was going to sell him the company when, in fact, she was going to take substantial sums of money from him under false pretenses.

25. CHARU MAKKER also told Plaintiff that it was necessary to use a new corporation because 3PLWD would be continuing business in New Jersey. She signed over her stock in a new company called 3PL Warehousing California LLC on June 6, 2023 to Plaintiff, stating that this was part of the transaction. This act convinced Plaintiff that CHARU MAKKER serious about the transaction.

26. On May 25, 2023, Defendants' CPA, named Cam Pardo, send a letter to the landlord of both warehouses (at Capitol and Jellick), Oltmans Construction, informing them of the sale and requesting a transfer of the lease to Plaintiff's name. Plaintiff is informed and believes and thereon alleges that this letter was sent, with a copy to Plaintiff, for the purpose of inducing Plaintiff to make the substantial financial contribution she was shortly thereafter to request.

27. CHARU MAKKER similarly sent a change of ownership email to the owners of both businesses on June 8, 2023, and copied Plaintiff on the email. This act convinced Plaintiff that CHARU MAKKER is serious about the transaction.

28. In fact, CHARU MAKKER had no intention of following through on the change of ownership, but worked through these means to persuade Plaintiff to turn over substantial sums of cash in exchange for nothing.

29. By electronic communication, CHARU MAKKER then asked Plaintiff to make a deposit for the business, which he did in the amount of $199,216.03. CHARU MAKKER told Plaintiff that amount needed to be paid for June rent and that this was Plaintiff's responsibility as Plaintiff was purchasing the business and they were about to sign the final agreement. Plaintiff made the payment to CHARU MAKKER in reliance on her statements.

30. Also at the request of CHARU MAKKER made by electronic communication, Plaintiff also paid $37,456.06 for employee payroll on June 16, 2023, which was a grand total of $236,681.09 towards the sale amount.

31. Plaintiff expected the final sale agreement to be signed within days and Plaintiff was taking over operations as promised.

32. As part of the transaction, CHARU MAKKER asked Plaintiff by electronic communication to officially resign his employment as of June 2023, and Plaintiff did so as she requested believing it was part of the transaction and necessary to consummate the transaction.

33. On June 22, 2023, CHARU MAKKER appeared at the company offices of 3PLWD along with co-defendants Pavan Makker, Siddarth Makker, Shivaan Makker, Rahul Chopra, Rakhee Chopra, and at least one DOE defendant name yet unknown. CHARU MAKKER stated that she would not be finalizing the deal. These defendants threatened Plaintiff with violence if he did not immediately leave the premises. Plaintiff left the premises.

34. CHARU MAKKER then stated that she would not be returning any of the $236,681.09 that was paid by Plaintiff.

35. Plaintiff has suffered emotional distress as well as monetary loss as a result of the fraud and physical intimidation.

**PATTERN OF RACKETEERING ACTIVITY**

36. Plaintiff is informed and believes and thereon alleges that the Defendants and each of them as part of the MAKKER Enterprise have engaged in at least two acts of racketeering, the last of which occurred within ten (10) years after the prior act of racketeering, are related and continuous in that they have the same or similar purposes, results, participants, methods of commission, and are otherwise not isolated events. The threat of continuing criminal conduct is ongoing.

37. Plaintiff is informed and believes and thereon alleges that Defendants and each of them have committed numerous violations of law that constitute predicate acts under Section 1961 of Title 18 of the United States Code, all of which are connected to the sale, distribution, and marketing of tobacco-related products, including vaping products.

38. Plaintiff is informed and believes and thereon alleges that those violations and acts of racketeering include but are not limited to:

(a) Mail fraud within the meaning of 18 U.S.C. § 1341, consisting of false statements to the Federal and State government concerning taxes and tax payments and employees.

(b) Wire fraud within the meaning of 18 U.S.C. § 1343 concerning false statements by electronic means made to fraudulently induce the payments of monies for false promises.

39. Plaintiff is further informed and believes that Defendants are engaged in interstate and foreign commerce, including but not limited to warehousing of products in interstate and international commerce.

40. Plaintiff is further informed and believes and thereon alleges that CHARU MAKKER has orchestrated through the association-in-fact enterprise two COVID-era PPP loan of $444,000 and $80,000 for 3PLWD ostensibly for payment of employees; however, as specified above, 3PLWD does not properly pay its employees. Instead, Plaintiff is informed and believes and thereon alleges that CHARU MAKKER improperly used the proceeds of that PPP loan to invest in real property in Florida, putting such funds in interstate commerce.

41. As to each of the foregoing predicate acts within the meaning of 18 U.S.C. 1961, defendants and each of them have conspired to continue committing such acts, and have aided and abetted one another in doing so.

42. Plaintiff is further informed and believes that there are numerous unnamed DOE defendants as yet unknown to Plaintiff who are aiding and abetting in the actions and violations described herein, whose identities when discovered will be added as DOE Defendants to this action.

**FIRST CAUSE OF ACTION**

**Fraud**

43. Plaintiff restates and realleges allegations in paragraphs 1 through 41 as if fully set forth herein.

44. In early May 2023, CHARU MAKKER approached Plaintiff with another offer of partnership, stating that she was not interested in running the business in California with her husband's passing, that she wanted to concentrate only on the New Jersey aspect of the business.

45. Plaintiff and CHARU MAKKER met at Zinque Café in Downtown Los Angeles on May 21, 2023, to discuss the matters. CHARU MAKKER agreed in substance that the business would be transferred to Plaintiff, and he would then pay her $20,000 per month out of the business for the next three years. Plaintiff then retained counsel to get this in writing.

46. The next day, plaintiff demanded the entire $720,000 as a lump sum payment instead, in a telephone call. Plaintiff agreed that this was possible if he could obtain an SBA acquisition loan. Plaintiff then applied for the loan through Rapid Capital Funding PC.

47. Ultimately Plaintiff and CHARU MAKKER coordinated to draft an agreement whereby Plaintiff would pay a total of $1,237,632 which included the security deposits on the two buildings (at 3920 Capitol and 1177 Jellick Avenue, both in the City of Industry) and $55,000. The agreement was drafted and CHARU MAKKER stated over electronic communications that the business would be handed over to Plaintiff on June 1, 2023.

48. CHARU MAKKER then undertook a series of actions designed to make Plaintiff believe that she was going to sell him the company when, in fact, she was going to take substantial sums of money from him under false pretenses.

49. CHARU MAKKER also told Plaintiff that it was necessary to use a new corporation because 3PLWD would be continuing business in New Jersey. She signed over her stock in a new company called 3PL Warehousing California LLC on June 6, 2023 to Plaintiff, stating that this was part of the transaction. This act convinced Plaintiff that CHARU MAKKER serious about the transaction.

50. On May 25, 2023, Defendants' CPA, named Cam Pardo, send a letter to the landlord of both warehouses (at Capitol and Jellick), Oltmans Construction, informing them of the sale and requesting a transfer of the lease to Plaintiff's name. Plaintiff is informed and believes and thereon alleges that this letter was sent, with a copy to Plaintiff, for the purpose of inducing Plaintiff to make the substantial financial contribution she was shortly thereafter to request.

51. CHARU MAKKER similarly sent a change of ownership email to the owners of both businesses on June 8, 2023, and copied Plaintiff on the email. This act convinced Plaintiff that CHARU MAKKER is serious about the transaction.

52. By electronic communication, CHARU MAKKER then asked Plaintiff to make a deposit for the business, which I did in the amount of $199,216.03. CHARU MAKKER told Plaintiff that amount needed to be paid for June rent and that this was Plaintiff's responsibility as Plaintiff was purchasing the business and they were about to sign the final agreement. Plaintiff made the payment to CHARU MAKKER in reliance on her statements.

53. Also at the request of CHARU MAKKER made by electronic communication, Plaintiff also paid $37,456.06 for employee payroll on June 16, 2023, which was a grand total of $236,681.09 towards the sale amount.

54. Plaintiff expected the final sale agreement to be signed within days and Plaintiff was taking over operations as promised.

55. As part of the transaction, CHARU MAKKER asked Plaintiff by electronic communication

to officially resign his employment as of June 2023, and Plaintiff did so as she requested believing it was part of the transaction and necessary to consummate the transaction.

56. On June 22, 2023, CHARU MAKKER appeared at the company offices of 3PLWD along with co-defendants Pavan Makker, Siddarth Makker, Shivaan Makker, Rahul Chopra, Rakhee Chopra, and at least one DOE defendant name yet unknown. CHARU MAKKER stated that she would not be finalizing the deal. These defendants threatened Plaintiff with violence if he did not immediately leave the premises. Plaintiff left the premises.

57. CHARU MAKKER then stated that she would not be returning any of the $236,681.09 that was paid by Plaintiff.

58. Plaintiff has suffered emotional distress as well as monetary loss as a result of the fraud and physical intimidation.

**SECOND CAUSE OF ACTION**

**Racketeering Influenced Corrupt Organizations Act**

**18 U.S.C. § 1962(a)**

59. Plaintiff restates and realleges the allegations of paragraphs 1 through 57 as if fully stated herein and are incorporated herein by reference.

60. The MAKKER Enterprise is an enterprise engaged in and whose activities affect interstate commerce. Defendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise. Specifically: Defendants have invested income in and from these operations in a warehousing enterprise in at least two U.S. states.

61. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

62. Plaintiff is further informed and believes that Defendants are engaged in interstate and foreign commerce, including but not limited to the receipt and storage of goods in interstate and foreign commerce.

63. As direct and proximate result of the Defendants' racketeering activities and violations of 18

U.S.C. § 1962(a), Plaintiffs have been injured in their business and property.

**THIRD CAUSE OF ACTION**

**Racketeering Influenced Corrupt Organizations Act**

**18 U.S.C. § 1962(c)**

64. Plaintiff restates and realleges the allegations of paragraphs 1 through 62 as if fully stated herein and are incorporated herein by reference.

65. The MAKKER Enterprise is an enterprise engaged in and whose activities affect interstate commerce. Defendants are employed by or associated with the enterprise. Defendant(s) agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for unlawful purposes.

66. Specifically: Defendants have conducted the warehousing business for interstate and internationally traded products through by means that constitute mail and wire fraud, and the other predicate acts listed above.

67. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

68. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

69. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in their business and property.

**FOURTH CAUSE OF ACTION**

**Racketeering Influenced Corrupt Organizations Act**

**U.S.C. § 1962(d)**

70. Plaintiff restates and realleges the allegations of paragraphs 1 through 68 as if fully stated herein and are incorporated herein by reference.

71. As set forth above, the Defendants and each of them agreed and conspired to violate 18

U.S.C. § 1962(a) (b) and (c). Specifically, defendants conspired to: (1) use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise (§ 1962(a)); and (2) conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity (§ 1962(c)).

72. Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

73. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C.A. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

74. As direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property.

## Jury Demand

Plaintiff demands a trial by jury as to all issues so triable.

## Prayer for Relief

WHEREFORE, Plaintiff prays for:

1. Actual damages
2. Treble damages as provided by the Civil RICO statute;
3. Attorneys' fees;
4. Costs of suit; and
5. Punitive damages.

Dated: September 6, 2023

Sage Law Partners, PC

Darrel C. Menthe
*Attorneys for Vikas Kesiraju*

- 13 -
CIVIL RICO COMPLAINT

**VERIFICATION**

STATE OF CALIFORNIA )

COUNTY OF LOS ANGELES )

I, hereby declare:

I have read the foregoing **VERIFIED COMPLAINT** and know its contents.

The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

Executed this 6 day of September, 2023, at WHITTIER, California.

I, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Vikas Kesiraju

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**Electronically FILED by Superior Court of California, County of Los Angeles 9/07/2023 4:13 PM David W. Slayton, Executive Officer/Clerk of Court, By D. Williams, Deputy Clerk**

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

CHARU MAKKER, an individual;
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

VIKAS KESIRAJU, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov)*, en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org)*, en el Centro de Ayuda de las Cortes de California,* (www.sucorte.ca.gov) *o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse
111 North Hill Street
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
23STCV21543

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Darrel C. Menthe, Sage Law Partners PC, 9696 Culver Blvd., Suite 301, Culver City, CA 90232 310-388-4870

DATE: *(Fecha)* 09/07/2023 Clerk, by *(Secretario)* David W. Slayton, Executive Officer/Clerk of Court D. Williams, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under:
☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: KESIRAJU V. MAKKER | CASE NUMBER: 23STCV21543 |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☒ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

3PL WAREHOUSING AND DISTRIBUTION LLC, a California limited liability company;
PAVAN MAKKER, an individual;
SIDDARTH MAKKER, an individual;
SHIVAAN MAKKER, an individual;
RAHUL CHOPRA, an individual;
RAKHEE CHOPRA, an individual;
and DOES 1 through 25, inclusive

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**